Filed 1/4/23  Cal. Water Impact Network v. City of San Buenaventura CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CALIFORNIA WATER IMPACT NETWORK,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SAN BUENAVENTURA,<br><br>    Defendant and Respondent. | 2d Civ. No. B315362<br>(Super. Ct. No. 56-2019-00532905-CU-WM-VTA)<br>(Ventura County) |

The City of San Buenaventura (City) has a contractual right to water from the State Water Project (SWP).  But the City has never been able to use the SWP water due to lack of infrastructure necessary to deliver the water to the City.  As a result, the City has to sell its allocation to other SWP contractors or to the California Department of Water Resources (CDWR) "turnback" program.  The City wants to construct the infrastructure necessary to use the water.  Pursuant to the California Environmental Quality Act (Pub. Resources Code,

§ 21000 et seq.[1]) (CEQA), the City prepared an environmental impact report (EIR) for the project. The California Water Impact Network (CWIN), an environmental organization, challenged the adequacy of the EIR. The trial court denied CWIN's petition for a writ of administrative mandate. We affirm.

FACTS

*Background*

In 1963 Ventura County contracted with the CDWR for the delivery of up to 20,000 acre feet per year of SWP water. The Casitas Municipal Water District (Casitas) was made administrator of the contract. In 1971 the City contracted with Casitas for up to 10,000 acre feet per year. The United Water Conservation District (United) contracted with Casitas for up to 5,000 acre feet per year. Casitas retained the remaining 5,000 acre feet per year.

*The project*

The City's project, the State Water Interconnection Project (SWI Project), proposes to import SWP water through the construction of a pipeline approximately seven miles long. The pipeline would also allow United and Casitas to receive SWP water.

The local water sources currently available to the City are diminishing. The City conceives of the SWP water that will be provided by the SWI Project as "replacement" for the diminishing local resources; that is, the City does not view the SWI Project as increasing the total amount of water available beyond that which has been traditionally available from local sources. The EIR for

---

[1] All further references are to the Public Resources Code unless otherwise indicated.

2

the project concludes that as mitigated the SWI Project will have no significant environmental impacts.

### Parallel project

The City also has the Ventura Water Supply Projects (Water Supply Projects). The purpose of the Water Supply Projects is to develop a "supplemental" supply of water from local resources such as wastewater and groundwater treatment. The supplemental supply is intended to increase the total amount of potable water for the City, as opposed to the SWI Project's replacement supply which is intended to replace water from diminishing current local resources. The SWI Project and the Water Supply Projects have separate EIR's.

## DISCUSSION

### I.

### Standard of review

An EIR is presumed valid, and the petitioner has the burden to prove otherwise. (*California Native Plant Society v. City of Santa Cruz* (2009) 177 Cal.App.4th 957, 986-987.) We review challenges brought under CEQA for an abuse of discretion. (§ 21168.5.) A lead agency abuses its discretion if: (1) it fails to proceed in a manner required by law, or (2) its decisions are not supported by substantial evidence in light of the whole record. (§ 21168.5; *Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502, 512.)

The omission of required information from an EIR constitutes a failure to proceed in a manner required by law where it precludes informed decision making by the agency or informed participation by the public. (*California Native Plant Society v. City of Santa Cruz, supra*, 117 Cal.App.4th at p. 987.) Our review of such procedural error is de novo. (*Ibid.*) Questions

3

concerning the amount or type of information, the scope of the analysis or the choice of methodology in an EIR are factual questions reviewed under the deferential substantial evidence standard. (*Id*. at pp. 986-987.) Under the substantial evidence standard, the agency is the finder of fact, and we must indulge in all reasonable inferences and resolve all conflicts in the evidence in favor of the agency's decision. (*Id*. at p. 985)

II.

*Essential analysis not excluded from EIR*

CWIN contends the EIR excluded the analysis discrediting the SWI Project's reliability.

*(a) Project reliability*

CWIN argues the City excluded from its EIR for the SWI Project a separate environmental review of the Water Supply Projects. Water Supply Projects is viewed as a supplemental supply of water, whereas the SWI Project is viewed as a replacement for a diminishing supply of water from current sources.

The EIR for the Water Supply Projects discusses the SWI Project in part as follows:

"[SWP]. . . would be subject to the SWP water allocation, updated each year depending on the hydrology in the state. Some years the full entitlement may be available, while other years less water would be available. The [CDWR] indicates that, over the long term, an average of approximately 60 percent of water entitlements may be available to the State Water Contractors. However, during certain parts of the year but not others, making it an unreliable source. The City of Ventura does not have storage opportunities to store water in aboveground or underground reservoirs when it is available. As a result, the

4

[SWI Project] is being pursued in parallel with the [Water Supply Projects] to augment water supplies when available, but the interconnection is not considered a reliable, consistent water supply."

But the EIR for the SWI Project discloses that the amount of SWP water available each year varies depending on the amount of precipitation, water in storage and regulatory restrictions; that the average annual delivery of SWP water is estimated at 62 percent of contracted entitlement; and that in a very dry year there may be no SWP delivery.  That information is sufficient to inform the City and members of the public about the reliability of SWP water.  It is not necessary for the SWI Project's EIR to explicitly state that the SWP is not considered a reliable supply of water.

CWIN argues the EIR does not show the SWI Project would reliably meet the SWI Project objectives.  The water may not be available even in emergencies.  But the overall policy objective is to provide some water to the City.  The EIR fully discloses the extent of the SWP's reliability.  It will deliver at least some water in most years.  Whether that is reliable enough to meet the City's project objectives is a question for the city council.  (*Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553, 564 ["We may not . . . substitute our judgment for that of the people and their local representatives"].)  CWIN cites no authority requiring a water source to be 100 percent reliable.  Few, if any, water sources would qualify.

*(b) Piecemeal review*

CWIN contends the City violated CEQA's prohibition on dividing a single project into multiple projects for the purpose of review.  (Citing *Boyung v. Local Agency Formation Com.* (1975)

5

13 Cal.3d 263, 283-284 [CEQA prohibits environmental considerations from being "submerged by chopping a large project into many little ones – each with a minimal potential impact on the environment – which cumulatively may have disastrous consequences"].) CWIN argues the SWI Project and the Water Supply Projects are simply two parts of the same project and should not have been the subject of separate EIR's.

It is true that both projects concern the City's water supply. But each project involves a different source of water, different infrastructure, and neither project is dependent on the completion of the other. Different projects may properly undergo separate environmental review when the projects can be implemented independently. (*McCann v. City of San Diego* (2021) 70 Cal.App.5th 51, 85.) That is the case here.

*(c) Supplemental and replacement water*

CWIN argues the City cannot salvage the inadequacy of the EIR by making a distinction between "supplemental water," such as the Water Supply Projects, and "replacement water," as the City labels the SWI Project.

The argument is based on the theory that the Water Supply Projects and the SWI Project are parts of the same project. CWIN claims that the City cannot justify a separate EIR for each project by labeling one project "supplemental water" and the other "replacement water."

But that is not what justifies separate EIR's. As we explained above, separate EIR's are justified because each project can be implemented independently. (*McCann v. City of San Diego, supra,* 70 Cal.App.5th at p. 85.)

6

*(d) Project objectives*

CWIN contends the SWI Project's stated objectives make dependence on SWP water a fait accompli.

But CEQA does not restrict an agency's discretion to identify and pursue a particular project designed to meet a particular set of objectives. (*San Diego Citizenry Group v. County of San Diego* (2013) 219 Cal.App.4th 1, 14.) Thus, the City's stated objectives are valid even if it means dependence on the SWP is a fait accompli. The City decides what project and objectives it wants to pursue.

The SWI Project's objectives are stated in the EIR as follows:

"[1] Provide a near-term water supply source for the City to enhance supply reliability;

"[2] Improve City water quality;

"[3] Provide a backup supply for the City's other potential, long-term water supply options;

"[4] Allow the City, Casitas and United to receive their SWP entitlements; and

"[5] Enable the City to deliver water to Calleguas during an imported water supply outage."

CWIN takes issue with the fourth objective, "Allow the City, Casitas and United to receive their SWP entitlements." CWIN argues the objective does not "logically follow from the central ones relating to water supply and quality . . . ." CWIN cites no authority requiring the objectives to logically follow. Receiving water from the SWP is not inconsistent with water supply and improved quality.

The only authority CWIN cites are cases relating to the adequacy of the project description. The cases hold that an

7

accurate, stable, and finite project description is required for a legally sufficient EIR. (*County of Inyo v. City of Los Angeles* (1977) 71 Cal.App.3d 185, 199.) Thus, an EIR may not include "incessant shifts among different project descriptions." (*Id*. at p. 197.) The project description here contains no such defect. It is sufficiently definite and certain. Moreover, it is unclear how such authority in any way supports CWIN's argument relating to one objective not logically following from other objectives.

In what appears to be a continuing diversion from CWIN's argument about an objective not logically following from other objectives, CWIN cites *City of Santee v. County of San Diego* (1989) 214 Cal.App.3d 1438 (*City of Santee*). There a city objected to a county's EIR for the "temporary expansion" of the county's jail facility. (*Id*. at p. 1440.) In concluding that the EIR did not provide an accurate, stable, and finite project description, the court stated: "Not only does a reading of the record support a conclusion that some future action on the temporary project was contemplated, it also reflects the EIR here could be considered one small part of the larger project to ease jail crowding in the entire county." (*Id*. at p. 1454.)

CWIN argues the words "supplemental" and "replacement," as used in the SWI Project EIR, are as ambiguous as the word "temporary," used in *City of Santee*. But the problem in *City of Santee* is not that "temporary" is ambiguous. In fact, the county's project had a specific termination date. The problem is that the county contemplated future action that was not disclosed in the EIR. That is not the case here.

### (e) Local alternatives

CWIN argues the EIR does not consider project alternatives that include exploring local water supply.

But the SWI Project and its objectives are to bring SWP water to the City. An EIR need not consider alternatives that cannot achieve the basic goal of the project. (*San Diego Citizenry Group v. County of San Diego, supra*, 219 Cal.App.4th at p. 14.) Local water supply cannot meet the basic goal of bringing SWP water to the City.

*(f) Unreliability effect on project impacts*

CWIN argues the EIR failed to analyze how the SWP's unreliability would exacerbate the SWI Project's impacts.

The only consequence CWIN mentions is the problem of finding a different backup supply when the SWP supply predictably fails. The problem posed by CWIN assumes that if the SWP water source fails, local sources of water will be insufficient. The SWI Project does not exacerbate the problem. Whether the SWP source of water fails or never existed, the result would be the same. A backup source would be necessary. The problem would exist whether or not the SWI Project is ever carried out. In fact, the SWI Project lessens the probability of a problem. By providing a source of water in addition to and independent of local sources, the SWI Project makes the need for a different backup supply less likely.

III.

*No project alternative*

CWIN contends the EIR's no project alternative evaded the foreseeable need to reduce reliance on the Sacramento River Delta (Delta) and to protect public trust resources.

A no project alternative in the EIR is required to "discuss the existing conditions at the time the notice of preparation is published . . . as well as what would be reasonably expected to occur in the foreseeable future if the project were not approved,

9

based on current plans and consistent with available infrastructure and community services." (Cal. Code Regs., tit. 14, § 15126.6 (e)(2).)

The no project alternative section of the EIR provides in part: "Without the proposed project, the SWP [a]llocations for the City of Ventura and Casitas would continue to be sold to other SWP contractors or to the DWR Turnback Pool Program." Eighty to ninety percent of the water in the turnback pool is purchased by Southern California entities.

CWIN argues nothing ensures that sales elsewhere can continue or continue without conditions or restrictions. Of course, anything can happen. But the purpose of the no project alternative is to provide a "factually based forecast of the environmental impacts of preserving the status quo." (*Planning & Conservation League v. Department of Water Resources* (2000) 83 Cal.App.4th 892, 917.) The status quo is that the City's SWP allocations are sold to other SWP contractors or to the CDWR turnback pool program. That is what the no project portion of the EIR discloses.

CWIN cites Water Code section 85021: "The policy of the State of California is to reduce reliance on the Delta in meeting California's future water supply needs through a statewide strategy of investing in improved regional supplies, conservation, and water use efficiency. Each region that depends on water from the Delta watershed shall improve its regional self-reliance for water through investment in water use efficiency, water recycling, advanced water technologies, local and regional water supply projects, and improved regional coordination of local and regional water supply efforts."

10

That is a fine statement of policy. But a fine statement of policy does not reduce the actual use of water. Moreover, the policy is to "reduce," not eliminate, reliance on the Delta. In fact, Water Code section 85031, subdivision (a) provides in part: "This division does not diminish, impair, or otherwise affect in any manner . . . water rights protections . . . ." No one reasonably expects reliance on Delta water will end in the foreseeable future, if ever. What is reasonably foreseeable is that the SWP will continue to allocate water in most years, and without the SWI Project, the allocation will be sold to other SWP contractors or to the turnback program.

There is simply not enough SWP water for every entity that is entitled to it. If the City does not use its allocation, it will be used by another entity. The Delta will not be aided if the City decides not to build the pipeline.

IV.

*Population growth*

CWIN contends the EIR's analysis of potential population growth is inadequate.

But the CWIN failed to raise the issue in the trial court. Failure to raise the issue in the trial court waives the issue on appeal. (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275, fn. 3.)

Indeed, CWIN argues that the SWP water supply is not reliable enough and that a backup source of water will have to be found when the SWP supply inevitably fails. Now CWIN wants to belatedly argue that SWP may produce such an abundance of water that it may spurn population growth.

An abundance of water is a problem the City is highly unlikely to face now or in the foreseeable future. Any suggestion

11

otherwise would be based on speculation so remote as to be meaningless.

DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


BALTODANO, J.


12

Ronda J. McKaig, Judge

Superior Court County of Ventura

_____

Law Office of Roger B. Moore and Roger B. Moore for Petitioner and Appellant.

Andrew M. Heglund, Miles P. Hogan, City Attorneys; Best Best & Krieger, Charity B. Schiller, Amy E. Hoyt for Defendant and Respondent.